1  **Ruth Rizkalla**
CBN 224973
2  RRizkalla@carlsonattorneys.com
**THE CARLSON LAW FIRM, P.C.**
3  1500 Rosecrans Ave., Ste. 500
Manhattan Beach, CA 90266
4  415-308-1915

5  **JOHN R. FABRY**
JFabry@carlsonattorneys.com
6  **EMILY MARLOWE**
EMarlowe@carlsonattorneys.com
7  *\* Pro Hac Vice motions to be submitted.*
**THE CARLSON LAW FIRM, P.C.**
8  1717 N. Interstate Highway 35, Ste. 305
Round Rock, TX 78664
9  (512) 671-7277

10  Attorneys for Plaintiffs

11          **UNITED STATES DISTRICT COURT**
       **NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION**
12

13  FELTON BROWN, SOPHIA EDWARDS,
PETER ENZINGER, NOAH LATHROP,
14  ERROL COOPER, KELLY CUMMINS,
HUGO ESCOBAR, DANIEL GONZALEZ,
15  CHERYL BASI, CHARNELLE RILEY,
EMANUEL GONZALEZ, RICHARD
16  GONZALEZ, ROSALVA MENDEZ,
CATHY SILVA, REBECCA VANCE, LONI
17  BAISCH, JESSICA BEHAIN, KENNETH
BERRY, ERIN CARTER, MARGARET
18  COLES, TRACY ERICKSON, LLOYD
HARRIS, NONA HARRIS, STEPHANIE
19  JACOBO, ERICKA MARTIN, DAMIEN
MONTOYA, NATAHNIEL PORTER,
20  ROCHELLE STEPHENS, MAIMOYE UKU,
CHEARISE BRADFORD, NANNETTE
21  MYERS, JESUS ARRIAGA, PARIS
BROWN, MARCO CARLOS, BIANCA
22  DAVIS, TRACY DAVIS, RONEISHA
EVANS, MICHELLE GUEVARA, MONICA
23  GUIDA, YANIRA HERNANDEZ,
MARQUES HUNTER, KATHRYN
24  LABRIOLA, ALBERTO LARA, ROBERT
MASON, RAQUEL MENDOZA,
25  MARJORIE MOSS, LISA RAMIREZ,
KAYLA RASMUSSEN, KAO SAELEE,
26  BENITO SERRANO, SANDRA SIFONTES,
MIESHA TOBIN, TIERRA TUBBS,
27  SHAMICA WHITTAKER

28           **Plaintiffs,**

**CASE NO.:  4:22-cv-02840**

**COMPLAINT FOR DAMAGES**

1. **FRAUD**
(MISREPRESENTATION)

2. **FRAUD**
(CONCEALMENT)

3. **NEGLIGENT**
MISREPRESENTATION

4. **VIOLATION OF THE**
CALIFORNIA CONSUMER
LEGAL REMEDIES ACT
(Cal. Civ. Code §§ 1750, *et seq.*)

5. **UNFAIR COMPETITION**
(Cal. Bus. & Prof. Code §§ 17200 *et seq.*)

6. **FALSE ADVERTISING**
(Cal. Bus. & Prof. Code §§ 17500, *et seq.*)

7. **CIVIL THEFT**
(Cal. Penal Code § 496(c))

8. **EXEMPLARY DAMAGES**

1

VS.                                                    **(Cal Civ. Code § 3294)**

**THE UNIVERSITY OF PHOENIX, INC.**          **DEMAND FOR JURY TRIAL**
**AND APOLLO EDUCATION GROUP, INC**
**DOES 1 through 10**

                **Defendants.**

Plaintiffs complain and allege as follows:

## INTRODUCTION

    **1.**    This lawsuit seeks recovery for Fraud (misrepresentations), Fraud (concealment), Negligent Misrepresentation, violations of the California Consumer Legal Remedies Act, Unfair Competition Law, False Advertising Law, Civil Theft, and Exemplary Damages against Defendants THE UNIVERISITY OF PHOENIX, INC. and APOLLO EDUCATION GROUP, INC., and DOES 1 through 10. Since at least 2012, Defendants misrepresented the benefits of attending and graduating from University of Phoenix. Defendants falsely and misleadingly advertised working with certain prominent companies, such as Microsoft and Adobe, to develop curriculum, and relationships with such companies created career or employment opportunities specifically for University of Phoenix graduates. These misrepresentations will be referred to hereinafter as the "Corporate Relationships Representations." Defendants engaged in this scheme of misleading and false advertising to induce potential students to purchase educational products and services, and to remain students through graduation. Plaintiffs relied on the Corporate Relationships Representations in choosing to purchase educational products and services from University of Phoenix.

    **2.**    Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, and personal knowledge of the allegations specifically pertaining to themselves. The basis for allegations made on information and belief includes the Civil Investigation Demand issued by the Federal Trade Commission (FTC) on September 8, 2015, the complaint filed by the FTC against Defendants in the District of Arizona on December 10, 2019, and the subsequent settlement of that case.[1] The culmination of that matter

---

[1] *See Federal Trade Commission v. The University of Phoenix, Inc. et al.,* Case No. CV-19-5772-

2

COMPLAINT FOR DAMAGES

came about as the result of a 4-year investigation undertaken by the FTC that was directly related to many of the advertisements and marketing schemes described herein, and ultimately results in a "Record $191 Million Settlement from the University of Phoenix to Resolve FTC Charges It Used Deceptive Advertising to Attract Prospective Students."[2]

## JURISDICTION, VENUE AND DIVISIONAL ASSIGNMENT

3.     This Court has jurisdiction over this action under 28 U.S.C. § 1332 as the parties are diverse and the amount in controversy exceeds $75,000.

4.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district, and pursuant to 28 U.S.C. §1391(d) because Defendants have sufficient contacts with this district to be subject to personal jurisdiction.

5.     Pursuant to Civil Local Rule 3-2(d), Divisional Assignment is proper in the Oakland Division as a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in counties served by the Oakland Division.

## PARTIES

6.     Plaintiff Felton Brown was at all relevant times a resident of San Francisco, California. Plaintiff enrolled in University of Phoenix in 2012, paid tuition and associated costs of attending University of Phoenix, and graduated in 2014 with a Master's in Business Administration degree. Plaintiff attended classes at the Oakland, California University of Phoenix campus and online. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially encountered Defendants' advertisements in approximately 2012, in radio ads and solicitation emails. The Corporate Relationships Representations were reiterated by a University of Phoenix enrollment

---

PHX-ESW, Dist. Arizona, Docs. 1 and 15.

[2] https://www.ftc.gov/news-events/press-releases/2019/12/ftc-obtains-record-191-million-settlement-university-phoenix

advisor and admissions counselor. Based on confirmation by the University of Phoenix representatives of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to encounter the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these Representations in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the advertisements touting relationships with and job or career opportunities specifically for University of Phoenix graduates at certain companies were false and misleading. Plaintiff did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Plaintiff had suffered harm that was caused by Defendants' wrongful conduct until within the applicable limitations period.

7.      Plaintiff Sophia Edwards was at all relevant times a resident of Napa, California. Plaintiff enrolled in University of Phoenix in 2014, paid tuition and associated costs of attending University of Phoenix, and graduated in 2018 with a Bachelor of Science degree in Criminal Justice Administration/Human Services for Criminal Justice. Plaintiff attended online classes in Napa California. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially encountered Defendants' advertisements in approximately 2014, in television ads, radio ads, and on the internet. The Corporate Relationships Representations were reiterated by a University of Phoenix enrollment advisor. Based on confirmation by the University of Phoenix representative of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to encounter the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these Representations in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the

4

companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the advertisements touting relationships with and job or career opportunities specifically for University of Phoenix graduates at certain companies were false and misleading.

8.     Plaintiff Peter Enzinger was at all relevant times a resident of Pinole, California. Plaintiff enrolled in University of Phoenix in 2014, paid tuition and associated costs of attending University of Phoenix, and graduated in 2016 with a Bachelor of Science in Communication degree. Plaintiff attended classes online. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially encountered Defendants' advertisements in approximately 2013, in television ads, radio ads and on the University of Phoenix website. The Corporate Relationships Representations were reiterated by a University of Phoenix recruiter and senior enrollment advisor. Based on confirmation by the University of Phoenix representatives of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to encounter the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these Representations in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the advertisements touting relationships with and job or career opportunities specifically for University of Phoenix graduates at certain companies were false and misleading. Plaintiff did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Plaintiff had suffered harm that was caused by Defendants' wrongful conduct until within the applicable limitations period.

**9.**     Plaintiff Noah Lathrop was at all relevant times a resident of Pinole, California. Plaintiff enrolled in University of Phoenix in 2016, paid tuition and associated costs of attending University of Phoenix, and graduated in 2019 with a Bachelor of Science degree in Accounting. Plaintiff attended classes online. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially encountered Defendants' advertisements in approximately 2015, in television ads, radio ads, on Facebook, in emails, and on Billboards. The Corporate Relationships Representations were reiterated by a University of Phoenix enrollment counselor, and recruiter. Based on confirmation by the University of Phoenix representatives of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to encounter the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these Representations in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the advertisements touting relationships with and job or career opportunities specifically for University of Phoenix graduates at certain companies were false and misleading. Plaintiff did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Plaintiff had suffered harm that was caused by Defendants' wrongful conduct until within the applicable limitations period.

**10.**     Plaintiff Errol Cooper was at all relevant times a resident of San Diego, California. Plaintiff enrolled in University of Phoenix in 2015, paid tuition and associated costs of attending University of Phoenix, and graduated in 2019 with a Bachelor of Science degree in Psychology. Plaintiff attended classes at the Granite Ridge Drive Campus in San Diego, California, and online. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies,

COMPLAINT FOR DAMAGES

1  when choosing to enroll in University of Phoenix. Plaintiff initially encountered Defendants'

2  advertisements in approximately 2014, in television ads, emails, and on Facebook. The Corporate

3  Relationships Representations were reiterated by a University of Phoenix recruiter and career

4  counselor. Based on confirmation by the University of Phoenix representatives of the Corporate

5  Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff

6  continued to encounter the Corporate Relationships Representations while a student at University

7  of Phoenix. Plaintiff also relied on these Representations in choosing to remain a student at

8  University of Phoenix. Plaintiff sought and did not find employment with any of the companies

9  that Defendants purported to have relationships providing job or career opportunities specifically

10 to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if

11 Plaintiff had known that the advertisements touting relationships with and job or career

12 opportunities specifically for University of Phoenix graduates at certain companies were false and

13 misleading. Plaintiff did not discover, and did not know of facts that would have caused a

14 reasonable person to suspect, that Plaintiff had suffered harm that was caused by Defendants'

15 wrongful conduct until within the applicable limitations period.

16      **11.**     Plaintiff Kelly Cummins was at all relevant times a resident of Vista, California.

17 Plaintiff enrolled in University of Phoenix in 2015, paid tuition and associated costs of attending

18 University of Phoenix, and graduated in 2017 with a Bachelor of Science degree in Business.

19 Plaintiff attended classes at the San Marcos, California campus and online. Plaintiff relied on

20 Defendants' advertisements making the Corporate Relationships Representations, touting

21 relationships and job or career opportunities with certain companies, when choosing to enroll in

22 University of Phoenix. Plaintiff initially encountered Defendants' advertisements in approximately

23 2015, in television commercials, YouTube videos, on Facebook, and LinkedIn. The Corporate

24 Relationships Representations were reiterated by a University of Phoenix senior academic

25 counselor and enrollment counselor. Based on confirmation by the University of Phoenix

26 representatives of the Corporate Relationships Representations, Plaintiff chose to enroll at

27 University of Phoenix. Plaintiff continued to encounter the Corporate Relationships

28

COMPLAINT FOR DAMAGES

Representations while a student at University of Phoenix. Plaintiff also relied on these Representations in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the advertisements touting relationships with and job or career opportunities specifically for University of Phoenix graduates at certain companies were false and misleading. Plaintiff did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Plaintiff had suffered harm that was caused by Defendants' wrongful conduct until within the applicable limitations period.

    **12.**    Plaintiff Hugo Escobar was at all relevant times a resident of Spring Valley, California. Plaintiff enrolled in University of Phoenix in 2015, paid tuition and associated costs of attending University of Phoenix, and graduated in 2018 with a Bachelor of Science degree in Criminal Justice Administration. Plaintiff attended classes at the San Diego campus. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially encountered Defendants' advertisements in approximately 2014, in television ads and on YouTube. The Corporate Relationships Representations were reiterated by a University of Phoenix enrollment advisor. Based on confirmation by the University of Phoenix representative of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to encounter the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these Representations in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the advertisements touting relationships with and job or career opportunities specifically for University of Phoenix

COMPLAINT FOR DAMAGES

graduates at certain companies were false and misleading. Plaintiff did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Plaintiff had suffered harm that was caused by Defendants' wrongful conduct until within the applicable limitations period.

13. Plaintiff Daniel Gonzales was at all relevant times a resident of San Diego, California. Plaintiff enrolled in University of Phoenix in 2012, paid tuition and associated costs of attending University of Phoenix, and graduated in 2018 with a Bachelor of Science degree in Information Technology. Plaintiff attended classes on campus in San Diego, California campus. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially encountered Defendants' advertisements in approximately 2012, in television commercials. The Corporate Relationships Representations were reiterated by a University of Phoenix enrollment counselor and an enrollment advisor. Based on confirmation by the University of Phoenix representatives of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to encounter the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these Representations in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the advertisements touting relationships with and job or career opportunities specifically for University of Phoenix graduates at certain companies were false and misleading. Plaintiff did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Plaintiff had suffered harm that was caused by Defendants' wrongful conduct until within the applicable limitations period.

14. Plaintiff Cheryl Basi was at all relevant times a resident of Modesto, California. Plaintiff enrolled in University of Phoenix in 2014, paid tuition and associated costs of attending

University of Phoenix, and graduated in 2019 with a Bachelor of Science degree in Human Services, Concentration in Family and Child Services. Plaintiff attended classes at the Salida, California campus, the San Diego, California campus, and online. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially encountered Defendants' advertisements in approximately 2013, in television ads, radio ads, and in University of Phoenix brochures. The Corporate Relationships Representations were reiterated by a University of Phoenix recruiter and an enrollment advisor. Based on confirmation by the University of Phoenix representatives of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to encounter the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these Representations in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the advertisements touting relationships with and job or career opportunities specifically for University of Phoenix graduates at certain companies were false and misleading. Plaintiff did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Plaintiff had suffered harm that was caused by Defendants' wrongful conduct until within the applicable limitations period.

15. Plaintiff Charnelle Riley was at all relevant times a resident of Fairfield, California. Plaintiff enrolled in University of Phoenix in 2013, paid tuition and associated costs of attending University of Phoenix, and graduated in 2016 with a Bachelor of Science degree in Business. Plaintiff attended classes online. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially encountered Defendants' advertisements in approximately 2013 in television ads. The Corporate

Relationships Representations were reiterated by a University of Phoenix enrollment advisor, and financial advisor. Based on confirmation by the University of Phoenix representatives of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to encounter the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these Representations in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the advertisements touting relationships with and job or career opportunities specifically for University of Phoenix graduates at certain companies were false and misleading. Plaintiff did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Plaintiff had suffered harm that was caused by Defendants' wrongful conduct until within the applicable limitations period.

16.    Plaintiff Emanuel Gonzalez was at all relevant times a resident of Stockton, California. Plaintiff enrolled in University of Phoenix in 2013, paid tuition and associated costs of attending University of Phoenix, and graduated in 2016 with a Bachelor of Science degree in Health Administration. Plaintiff attended classes at the Lathrop and Salinas, California campuses, and online. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially encountered Defendants' advertisements in approximately 2012, in television and radio ads. The Corporate Relationships Representations were reiterated by a University of Phoenix admissions counselor, financial advisor, and academic counselor. Based on confirmation by the University of Phoenix representatives of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to encounter the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these Representations in choosing to remain a student at University of Phoenix. Plaintiff sought and did

COMPLAINT FOR DAMAGES

not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the advertisements touting relationships with and job or career opportunities specifically for University of Phoenix graduates at certain companies were false and misleading. Plaintiff did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Plaintiff had suffered harm that was caused by Defendants' wrongful conduct until within the applicable limitations period.

17.    Plaintiff Richard Gonzalez was at all relevant times a resident of Stockton, California. Plaintiff enrolled in University of Phoenix in 2014, paid tuition and associated costs of attending University of Phoenix, and graduated in 2017 with a Bachelor of Science degree in Business. Plaintiff attended classes at the Livermore, California campus. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially encountered Defendants' advertisements in approximately 2012, in television ads, on the University of Phoenix website, YouTube, in brochures, solicitation emails, and on Facebook. The Corporate Relationships Representations were reiterated by a University of Phoenix enrollment advisor, counselor, and professor. Based on confirmation by the University of Phoenix representatives of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to encounter the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these Representations in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the advertisements touting relationships with and job or career opportunities specifically for University of Phoenix graduates at certain companies were false and misleading. Plaintiff did not

COMPLAINT FOR DAMAGES

discover, and did not know of facts that would have caused a reasonable person to suspect, that Plaintiff had suffered harm that was caused by Defendants' wrongful conduct until within the applicable limitations period.

18.     Plaintiff Rosalva Mendez was at all relevant times a resident of Bakersfield, California. Plaintiff enrolled in University of Phoenix in 2012, paid tuition and associated costs of attending University of Phoenix, and graduated in 2017 with an Associate of Arts degree in Accounting Foundations, and in 2020 with a Bachelor of Science degree in Accounting. Plaintiff attended classes online. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially encountered Defendants' advertisements in approximately 2012, in television ads. The Corporate Relationships Representations were reiterated by a University of Phoenix recruiter. Based on confirmation by the University of Phoenix representative of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to encounter the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these Representations in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the advertisements touting relationships with and job or career opportunities specifically for University of Phoenix graduates at certain companies were false and misleading. Plaintiff did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Plaintiff had suffered harm that was caused by Defendants' wrongful conduct until within the applicable limitations period.

19.     Plaintiff Cathy Silva was at all relevant times a resident of Tulare, California. Plaintiff enrolled in University of Phoenix in 2012, paid tuition and associated costs of attending University of Phoenix, and graduated in 2016 with a Bachelor of Science degree in Business

Management. Plaintiff attended classes at Visalia Convention Center campus and online. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially encountered Defendants' advertisements in approximately 2012, in television ads, radio ads, and on the University of Phoenix website. The Corporate Relationships Representations were reiterated by a University of Phoenix recruiter, counselor, and enrollment advisor. Based on confirmation by the University of Phoenix representatives of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to encounter the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these Representations in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the advertisements touting relationships with and job or career opportunities specifically for University of Phoenix graduates at certain companies were false and misleading. Plaintiff did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Plaintiff had suffered harm that was caused by Defendants' wrongful conduct until within the applicable limitations period.

20.     Plaintiff Rebecca Vance was at all relevant times a resident of Inyokern, California. Plaintiff enrolled in University of Phoenix in 2013, paid tuition and associated costs of attending University of Phoenix, and graduated in 2015 with a Bachelor of Science degree in Environmental Science. Plaintiff attended classes online. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially encountered Defendants' advertisements in approximately 2013, in television ads and on Facebook. The Corporate Relationships Representations were reiterated by a University of Phoenix admissions counselor. Based on confirmation by the University of Phoenix

COMPLAINT FOR DAMAGES

representative of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to encounter the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these Representations in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the advertisements touting relationships with and job or career opportunities specifically for University of Phoenix graduates at certain companies were false and misleading. Plaintiff did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Plaintiff had suffered harm that was caused by Defendants' wrongful conduct until within the applicable limitations period.

21.    Plaintiff Loni Baisch was at all relevant times a resident of Marysville, California. Plaintiff enrolled in University of Phoenix in 2014, paid tuition and associated costs of attending University of Phoenix, and graduated in 2016 with an Associate of Arts degree, Concentration in Human Services Management. Plaintiff attended classes online. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially encountered Defendants' advertisements in approximately 2014, in television ads, on Facebook, in radio ads, and on the internet. The Corporate Relationships Representations were reiterated by a University of Phoenix enrollment advisor. Based on confirmation by the University of Phoenix representative of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to encounter the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these Representations in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates.

COMPLAINT FOR DAMAGES

Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the advertisements touting relationships with and job or career opportunities specifically for University of Phoenix graduates at certain companies were false and misleading.

22.     Plaintiff Jessica Behain was at all relevant times a resident of Long Beach, California. Plaintiff enrolled in University of Phoenix in 2015, paid tuition and associated costs of attending University of Phoenix, and graduated in 2017 with a Bachelor of Science degree in Healthcare Administration. Plaintiff attended classes online. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially encountered Defendants' advertisements in approximately 2014, in television ads, on the internet, and in brochures. The Corporate Relationships Representations were reiterated by a University of Phoenix enrollment counselor. Based on confirmation by the University of Phoenix representative of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to encounter the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these Representations in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the advertisements touting relationships with and job or career opportunities specifically for University of Phoenix graduates at certain companies were false and misleading. Plaintiff did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Plaintiff had suffered harm that was caused by Defendants' wrongful conduct until within the applicable limitations period.

23.     Plaintiff Kenneth Berry was at all relevant times a resident of Los Angeles, California. Plaintiff enrolled in University of Phoenix in 2013, paid tuition and associated costs of attending University of Phoenix, and graduated in 2015 with a Bachelor of Science degree in

COMPLAINT FOR DAMAGES

Criminal Justice Administration, Concentration in Management. Plaintiff attended classes online. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially encountered Defendants' advertisements in approximately 2012, in Facebook, the University of Phoenix website, and television ads. The Corporate Relationships Representations were reiterated by a University of Phoenix admissions representative. Based on confirmation by the University of Phoenix representative of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to encounter the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these Representations in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the advertisements touting relationships with and job or career opportunities specifically for University of Phoenix graduates at certain companies were false and misleading. Plaintiff did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Plaintiff had suffered harm that was caused by Defendants' wrongful conduct until within the applicable limitations period.

**24.**     Plaintiff Erin Carter was at all relevant times a resident of Lancaster, California. Plaintiff enrolled in University of Phoenix in 2012, paid tuition and associated costs of attending University of Phoenix, and graduated in 2014 with an Associate of Arts degree, Concentration in Psychology, and in 2017 with a Bachelor of Science degree in Human Services. Plaintiff attended classes online. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially encountered Defendants' advertisements in approximately 2012, in television commercials and radio ads. The Corporate

Relationships Representations were reiterated by a University of Phoenix recruiter and enrollment counselor. Based on confirmation by the University of Phoenix representatives of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to encounter the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these Representations in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the advertisements touting relationships with and job or career opportunities specifically for University of Phoenix graduates at certain companies were false and misleading. Plaintiff did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Plaintiff had suffered harm that was caused by Defendants' wrongful conduct until within the applicable limitations period.

   25.   Plaintiff Margaret Coles was at all relevant times a resident of San Bernardino, California. Plaintiff enrolled in University of Phoenix in 2014, paid tuition and associated costs of attending University of Phoenix, and graduated in 2018 with a Bachelor of Science in Health Administration degree. Plaintiff attended classes at Moreno Valley, California Campus. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially encountered Defendants' advertisements in approximately 2014, in radio ads and on the University of Phoenix website. The Corporate Relationships Representations were reiterated by a University of Phoenix academic counselor. Based on confirmation by the University of Phoenix representative of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to encounter the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these Representations in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported

to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the advertisements touting relationships with and job or career opportunities specifically for University of Phoenix graduates at certain companies were false and misleading. Plaintiff did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Plaintiff had suffered harm that was caused by Defendants' wrongful conduct until within the applicable limitations period.

26.    Plaintiff Tracy Erickson was at all relevant times a resident of San Andreas, California. Plaintiff enrolled in University of Phoenix in 2012, paid tuition and associated costs of attending University of Phoenix, and graduated in 2016 with a Bachelor of Science degree in Nursing. Plaintiff attended classes at the Salida and Modesto California Campuses. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially encountered Defendants' advertisements in approximately 2012, in radio ads, television commercials, and on the University of Phoenix website. The Corporate Relationships Representations were reiterated by University of Phoenix representatives. Based on confirmation by the University of Phoenix representatives of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to encounter the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these Representations in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the advertisements touting relationships with and job or career opportunities specifically for University of Phoenix graduates at certain companies were false and misleading.

27.    Plaintiff Lloyd Harris was at all relevant times a resident of Hawthorne, California. Plaintiff enrolled in University of Phoenix in 2015, paid tuition and associated costs of attending

COMPLAINT FOR DAMAGES

University of Phoenix, and graduated in 2017 with an Associate of Arts degree, Concentration in Information Technology. Plaintiff attended classes online. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially encountered Defendants' advertisements in approximately 2015, in television and radio ads, and on the internet. The Corporate Relationships Representations were reiterated by a University of Phoenix enrollment advisor. Based on confirmation by the University of Phoenix representative of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to encounter the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these Representations in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the advertisements touting relationships with and job or career opportunities specifically for University of Phoenix graduates at certain companies were false and misleading. Plaintiff did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Plaintiff had suffered harm that was caused by Defendants' wrongful conduct until within the applicable limitations period.

28. Plaintiff Nona Harris was at all relevant times a resident of Hawthorne, California. Plaintiff enrolled in University of Phoenix in 2014, paid tuition and associated costs of attending University of Phoenix, and graduated in 2016 with an Associate of Arts Concentration in Business Foundations degree, and 2018 with a Bachelor of Science degree in Accounting. Plaintiff attended classes online. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially encountered Defendants' advertisements in approximately 2013, in radio ads, in emails, in social media advertisements, and

television commercials. The Corporate Relationships Representations were reiterated by a University of Phoenix admissions representative. Based on confirmation by the University of Phoenix representative of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to encounter the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these Representations in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the advertisements touting relationships with and job or career opportunities specifically for University of Phoenix graduates at certain companies were false and misleading. Plaintiff did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Plaintiff had suffered harm that was caused by Defendants' wrongful conduct until within the applicable limitations period.

29.     Plaintiff Stephanie Jacobo was at all relevant times a resident of Gardena, California. Plaintiff enrolled in University of Phoenix in 2012, paid tuition and associated costs of attending University of Phoenix, and graduated in 2019 with a Bachelor of Science degree in Criminal Justice Administration. Plaintiff attended classes online. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially encountered Defendants' advertisements in approximately 2012, in television ads, on social media, and YouTube Video ads. The Corporate Relationships Representations were reiterated by a University of Phoenix Program Enrollment Specialist. Based on confirmation by the University of Phoenix representative of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to encounter the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these Representations in choosing to remain a student at University of Phoenix. Plaintiff sought

21

1  and did not find employment with any of the companies that Defendants purported to have

2  relationships providing job or career opportunities specifically to University of Phoenix graduates.

3  Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the

4  advertisements touting relationships with and job or career opportunities specifically for

5  University of Phoenix graduates at certain companies were false and misleading. Plaintiff did not

6  discover, and did not know of facts that would have caused a reasonable person to suspect, that

7  Plaintiff had suffered harm that was caused by Defendants' wrongful conduct until within the

8  applicable limitations period.

9       **30.**    Plaintiff Ericka Martin was at all relevant times a resident of Corona, California.

10  Plaintiff enrolled in University of Phoenix in 2013, paid tuition and associated costs of attending

11  University of Phoenix, and graduated in 2018 with an Associate of Arts degree and 2020 with a

12  Bachelor of Science degree in Business. Plaintiff attended classes online. Plaintiff relied on

13  Defendants' advertisements making the Corporate Relationships Representations, touting

14  relationships and job or career opportunities with certain companies, when choosing to enroll in

15  University of Phoenix. Plaintiff initially encountered Defendants' advertisements in approximately

16  2012, in television ads and on Facebook. The Corporate Relationships Representations were

17  reiterated by a University of Phoenix enrollment advisor and a counselor. Based on confirmation

18  by the University of Phoenix representatives of the Corporate Relationships Representations,

19  Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to encounter the Corporate

20  Relationships Representations while a student at University of Phoenix. Plaintiff also relied on

21  these Representations in choosing to remain a student at University of Phoenix. Plaintiff sought

22  and did not find employment with any of the companies that Defendants purported to have

23  relationships providing job or career opportunities specifically to University of Phoenix graduates.

24  Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the

25  advertisements touting relationships with and job or career opportunities specifically for

26  University of Phoenix graduates at certain companies were false and misleading.

27

28

22

31.     Plaintiff Damien Montoya was at all relevant times a resident of Hidden Hills, California. Plaintiff enrolled in University of Phoenix in 2012, paid tuition and associated costs of attending University of Phoenix, and graduated in 2016 with a Bachelor of Science degree in Environmental Science. Plaintiff attended classes online. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially encountered Defendants' advertisements in approximately 2012, in The University of Phoenix website. The Corporate Relationships Representations were reiterated by University of Phoenix counselors. Based on confirmation by the University of Phoenix representatives of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to encounter the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these Representations in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the advertisements touting relationships with and job or career opportunities specifically for University of Phoenix graduates at certain companies were false and misleading. Plaintiff did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Plaintiff had suffered harm that was caused by Defendants' wrongful conduct until within the applicable limitations period.

32.     Plaintiff Nathaniel Porter was at all relevant times a resident of Temecula, California. Plaintiff enrolled in University of Phoenix in 2013, paid tuition and associated costs of attending University of Phoenix, and graduated in 2018 with a Bachelor of Science degree in Business. Plaintiff attended classes at the Murrieta, California campus and online. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in

COMPLAINT FOR DAMAGES

University of Phoenix. Plaintiff initially encountered Defendants' advertisements in approximately 2013, in radio ads, in the internet, and on the University of Phoenix website. The Corporate Relationships Representations were reiterated by a University of Phoenix recruiter and enrollment advisor. Based on confirmation by the University of Phoenix representatives of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to encounter the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these Representations in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the advertisements touting relationships with and job or career opportunities specifically for University of Phoenix graduates at certain companies were false and misleading. Plaintiff did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Plaintiff had suffered harm that was caused by Defendants' wrongful conduct until within the applicable limitations period.

**33.** Plaintiff Rochelle Stephens was at all relevant times a resident of Apple Valley, California. Plaintiff enrolled in University of Phoenix in 2012, paid tuition and associated costs of attending University of Phoenix, and graduated in 2016 with an Associate of Arts degree, Concentration in Health Care Administration/Medical Records. Plaintiff attended classes online. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially encountered Defendants' advertisements in approximately 2012, in television ads, Facebook, radio ads, and the University of Phoenix website. The Corporate Relationships Representations were reiterated by a University of Phoenix recruiter and counselor. Based on confirmation by the University of Phoenix representatives of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to encounter the Corporate Relationships

COMPLAINT FOR DAMAGES

Representations while a student at University of Phoenix. Plaintiff also relied on these Representations in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the advertisements touting relationships with and job or career opportunities specifically for University of Phoenix graduates at certain companies were false and misleading. Plaintiff did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Plaintiff had suffered harm that was caused by Defendants' wrongful conduct until within the applicable limitations period.

**34.**     Plaintiff Maimoye Uku was at all relevant times a resident of Inyokern, California. Plaintiff enrolled in University of Phoenix in 2012, paid tuition and associated costs of attending University of Phoenix, and graduated in 2014 with a Bachelor of Science degree in Environmental Science. Plaintiff attended classes online. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially encountered Defendants' advertisements in 2011, in television ads, radio ads, on Facebook and the University of Phoenix website. The Corporate Relationships Representations were reiterated by a University of Phoenix academic counselor, financial advisor, and enrollment advisor. Based on confirmation by the University of Phoenix representatives of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to encounter the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these Representations in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the advertisements touting relationships with and job or career opportunities

1   specifically for University of Phoenix graduates at certain companies were false and misleading.

2   Plaintiff did not discover, and did not know of facts that would have caused a reasonable person

3   to suspect, that Plaintiff had suffered harm that was caused by Defendants' wrongful conduct until

4   within the applicable limitations period.

5       **35.**   Plaintiff Chearise Bradford was at all relevant times a resident of Hayward,

6   California. Plaintiff enrolled in University of Phoenix in 2013, paid tuition and associated costs of

7   attending University of Phoenix, and graduated in 2015 with an Associate of Arts in Accounting

8   Foundations degree, and 2017 with a Bachelor of Science degree in Business. Plaintiff attended

9   classes online while in Hayward, California, as well as online and on campus in Las Vegas.

10  Plaintiff relied on Defendants' advertisements making the Corporate Relationships

11  Representations, touting relationships and job or career opportunities with certain companies,

12  when choosing to enroll in University of Phoenix. Plaintiff initially encountered Defendants'

13  advertisements in approximately 2012, in television ads, radio ads, and on the University of

14  Phoenix website. The Corporate Relationships Representations were reiterated by a University of

15  Phoenix recruiter, an enrollment advisor, and a counselor. Based on confirmation by the University

16  of Phoenix representatives of the Corporate Relationships Representations, Plaintiff chose to enroll

17  at University of Phoenix. Plaintiff continued to encounter the Corporate Relationships

18  Representations while a student at University of Phoenix. Plaintiff also relied on these

19  Representations in choosing to remain a student at University of Phoenix. Plaintiff sought and did

20  not find employment with any of the companies that Defendants purported to have relationships

21  providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff

22  would not have enrolled in University of Phoenix if Plaintiff had known that the advertisements

23  touting relationships with and job or career opportunities specifically for University of Phoenix

24  graduates at certain companies were false and misleading. Plaintiff did not discover, and did not

25  know of facts that would have caused a reasonable person to suspect, that Plaintiff had suffered

26  harm that was caused by Defendants' wrongful conduct until within the applicable limitations

27  period.

28

COMPLAINT FOR DAMAGES

36.     Plaintiff Nannette Myers was at all relevant times a resident of Santa Clarita, California. Plaintiff enrolled in University of Phoenix in 2014, paid tuition and associated costs of attending University of Phoenix, and graduated in 2016 with an Associate of Arts degree in Human Services. Plaintiff attended classes online. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially encounter Defendants' advertisements in approximately 2014, in television commercials. The Corporate Relationships Representations were reiterated by a University of Phoenix enrollment advisor and counselor. Based on confirmation by the University of Phoenix representatives of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to encounter the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these Representations in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the advertisements touting relationships with and job or career opportunities specifically for University of Phoenix graduates at certain companies were false and misleading. Plaintiff did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Plaintiff had suffered harm that was caused by Defendants' wrongful conduct until within the applicable limitations period.

37.     Plaintiff Jesus Arriaga was at all relevant times a resident of Winchester, California. Plaintiff enrolled in University of Phoenix in 2015, paid tuition and associated costs of attending University of Phoenix, and graduated in 2018 with a Bachelor of Science in Business degree. Plaintiff attended classes at the Murrieta, California Campus. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially encountered Defendants' advertisements in approximately 2014, in radio ads and

27

COMPLAINT FOR DAMAGES

on the University of Phoenix website. The Corporate Relationships Representations were reiterated by a University of Phoenix recruiter, and a University of Phoenix Counselor. Based on confirmation by the University of Phoenix representatives of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to encounter the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these Representations in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the advertisements touting relationships with and job or career opportunities specifically for University of Phoenix graduates at certain companies were false and misleading. Plaintiff did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Plaintiff had suffered harm that was caused by Defendants' wrongful conduct until within the applicable limitations period.

38.     Plaintiff Paris Brown was at all relevant times a resident of Fresno, California. Plaintiff enrolled in University of Phoenix in 2014, paid tuition and associated costs of attending University of Phoenix, and graduated in 2018 with a Bachelor of Science degree in Psychology, and graduated in 2021 with a Master's of Science in Counseling/Marriage, Family and Child Therapy.  Plaintiff attended classes at the University of Phoenix Fresno Campus. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially encountered Defendants' advertisements in approximately 2014, in television ads, on the radio, and social media. The Corporate Relationships Representations were reiterated by a University of Phoenix enrollment counselor. Based on confirmation by the University of Phoenix representative of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to encounter the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff

also relied on these Representations in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the advertisements touting relationships with and job or career opportunities specifically for University of Phoenix graduates at certain companies were false and misleading. Plaintiff did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Plaintiff had suffered harm that was caused by Defendants' wrongful conduct until within the applicable limitations period.

**39.**     Plaintiff Marco Carlos was at all relevant times a resident of El Cajon, California. Plaintiff enrolled in University of Phoenix in 2013, paid tuition and associated costs of attending University of Phoenix, and graduated in 2015 with a Bachelor of Science degree in Business. Plaintiff attended classes at the San Diego Campus and online. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially encountered Defendants' advertisements in approximately 2012, in television ads, radio ads, and on the University of Phoenix website. The Corporate Relationships Representations were reiterated by a University of Phoenix recruiter, an enrollment advisor, and a counselor. Based on confirmation by the University of Phoenix representatives of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to encounter the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these Representations in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the advertisements touting relationships with and job or career opportunities specifically for University of Phoenix graduates at certain companies were false and

COMPLAINT FOR DAMAGES

misleading. Plaintiff did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Plaintiff had suffered harm that was caused by Defendants' wrongful conduct until within the applicable limitations period.

40.     Plaintiff Bianca Davis was at all relevant times a resident of San Diego, California. Plaintiff enrolled in University of Phoenix in 2013, paid tuition and associated costs of attending University of Phoenix, and graduated in 2017 with a Bachelor of Science degree in Accounting. Plaintiff attended classes at the San Diego, California Campus and online. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially encountered Defendants' advertisements in approximately 2013, in radio ads, emails, and television ads. The Corporate Relationships Representations were reiterated by a University of Phoenix counselor and finance advisor. Based on confirmation by the University of Phoenix representatives of the Corporate Relationships Representation, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to encounter the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these Representations in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the advertisements touting relationships with and job or career opportunities specifically for University of Phoenix graduates at certain companies were false and misleading. Plaintiff did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Plaintiff had suffered harm that was caused by Defendants' wrongful conduct until within the applicable limitations period.

41.     Plaintiff Tracy Davis was at all relevant times a resident of Bakersfield, California. Plaintiff enrolled in University of Phoenix in 2015, paid tuition and associated costs of attending University of Phoenix, and graduated in 2019 with a Bachelor of Science in Psychology degree.

Plaintiff attended classes online and at the Bakersfield, California Campus. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially encountered Defendants' advertisements in approximately 2012, in television ads and at job fairs. The Corporate Relationships Representations were reiterated by a counselor. Based on confirmation by the University of Phoenix representative of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to encounter the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these Representations in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the advertisements touting relationships with and job or career opportunities specifically for University of Phoenix graduates at certain companies were false and misleading. Plaintiff did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Plaintiff had suffered harm that was caused by Defendants' wrongful conduct until within the applicable limitations period.

42.     Plaintiff Roneisha Evans was at all relevant times a resident of Gardena, California. Plaintiff enrolled in University of Phoenix in 2014, paid tuition and associated costs of attending University of Phoenix, and graduated in 2016 with a Bachelor of Science degree in Health Administration. Plaintiff attended classes online. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially encountered Defendants' advertisements in approximately 2013, in television ads. The Corporate Relationships Representations were reiterated by a University of Phoenix enrollment advisor. Based on confirmation by the University of Phoenix representative of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff

COMPLAINT FOR DAMAGES

continued to encounter the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these Representations in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the advertisements touting relationships with and job or career opportunities specifically for University of Phoenix graduates at certain companies were false and misleading. Plaintiff did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Plaintiff had suffered harm that was caused by Defendants' wrongful conduct until within the applicable limitations period.

43.     Plaintiff Michelle Guevara was at all relevant times a resident of Fair Oak, California. Plaintiff enrolled in University of Phoenix in 2016, paid tuition and associated costs of attending University of Phoenix, and graduated in 2018 with an Associate of Arts degree, Concentration in Business Fundamentals, and in 2021 with a Bachelor of Science degree in Accounting. Plaintiff attended online classes. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially encountered Defendants' advertisements in approximately 2015, in television ads, on Facebook, Instagram, YouTube, and in radio ads. The Corporate Relationships Representations were reiterated by a University of Phoenix recruiter, and an academic counselor. Based on confirmation by the University of Phoenix representatives of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to encounter the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these Representations in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that

COMPLAINT FOR DAMAGES

the advertisements touting relationships with and job or career opportunities specifically for University of Phoenix graduates at certain companies were false and misleading. Plaintiff did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Plaintiff had suffered harm that was caused by Defendants' wrongful conduct until within the applicable limitations period.

**44.** Plaintiff Monica Guida was at all relevant times a resident of Concord, California. Plaintiff enrolled in University of Phoenix in 2012, paid tuition and associated costs of attending University of Phoenix, and graduated in 2019 with a Bachelor of Science in Accounting degree. Plaintiff attended classes at the Livermore, California campus. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially encountered Defendants' advertisements in approximately 2012, in radio and television ads. The Corporate Relationships Representations were reiterated by a University of Phoenix enrollment advisor. Based on confirmation by the University of Phoenix representative of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to encounter the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these Representations in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the advertisements touting relationships with and job or career opportunities specifically for University of Phoenix graduates at certain companies were false and misleading. Plaintiff did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Plaintiff had suffered harm that was caused by Defendants' wrongful conduct until within the applicable limitations period.

**45.** Plaintiff Yanira Hernandez was at all relevant times a resident of Paramount, California. Plaintiff enrolled in University of Phoenix in 2015, paid tuition and associated costs of

COMPLAINT FOR DAMAGES

attending University of Phoenix, and graduated in 2018 with a Bachelor of Science degree in Health Administration. Plaintiff attended classes at the Gardena, California Campus and online. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially encountered Defendants' advertisements in approximately 2014, in television ads, radio ads, on social media, and online ads. The Corporate Relationships Representations were reiterated by a University of Phoenix admissions representative. Based on confirmation by the University of Phoenix representative of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to encounter the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these Representations in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the advertisements touting relationships with and job or career opportunities specifically for University of Phoenix graduates at certain companies were false and misleading. Plaintiff did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Plaintiff had suffered harm that was caused by Defendants' wrongful conduct until within the applicable limitations period.

**46.** Plaintiff Marques Hunter was at all relevant times a resident of Sacramento, California. Plaintiff enrolled in University of Phoenix in 2014, paid tuition and associated costs of attending University of Phoenix, and graduated in 2018 with a Bachelor of Science degree in Information Technology. Plaintiff attended classes at the Great Oaks Campus in Sacramento, California. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially encountered Defendants' advertisements in approximately 2013, in television ads. The Corporate Relationships

Representations were reiterated by a University of Phoenix senior enrollment advisor. Based on confirmation by the University of Phoenix representative of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to encounter the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these Representations in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the advertisements touting relationships with and job or career opportunities specifically for University of Phoenix graduates at certain companies were false and misleading. Plaintiff did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Plaintiff had suffered harm that was caused by Defendants' wrongful conduct until within the applicable limitations period.

47.    Plaintiff Kathryn Labriola was at all relevant times a resident of San Diego, California. Plaintiff enrolled in University of Phoenix 2013, paid tuition and associated costs of attending University of Phoenix, and graduated in 2017 with a Bachelor of Science degree in Business. Plaintiff attended classes online. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially encountered Defendants' advertisements in approximately 2013, in television ads, online, and in radio ads. The Corporate Relationships Representations were reiterated by a University of Phoenix recruiter, enrollment advisor and counselor. Based on confirmation by the University of Phoenix representatives of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to encounter the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these Representations in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships

COMPLAINT FOR DAMAGES

providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the advertisements touting relationships with and job or career opportunities specifically for University of Phoenix graduates at certain companies were false and misleading. Plaintiff did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Plaintiff had suffered harm that was caused by Defendants' wrongful conduct until within the applicable limitations period.

48.     Plaintiff Alberto Lara was at all relevant times a resident of South Gate, California. Plaintiff enrolled in University of Phoenix in 2014, paid tuition and associated costs of attending University of Phoenix, and graduated in 2019 with an Associate of Arts Concentration in Business Fundamentals degree. Plaintiff attended classes online. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially encountered Defendants' advertisements in approximately 2014, in radio ads and on the University of Phoenix website. The Corporate Relationships Representations were reiterated by a University of Phoenix enrollment counselor, and recruiter. Based on confirmation by the University of Phoenix representatives of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to encounter the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these Representations in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the advertisements touting relationships with and job or career opportunities specifically for University of Phoenix graduates at certain companies were false and misleading. Plaintiff did not discover, and did not know of facts that would have caused a reasonable person to suspect, that

COMPLAINT FOR DAMAGES

1  Plaintiff had suffered harm that was caused by Defendants' wrongful conduct until within the

2  applicable limitations period.

3      **49.**      Plaintiff Robert Mason was at all relevant times a resident of Victorville, California.

4  Plaintiff enrolled in University of Phoenix in 2013, paid tuition and associated costs of attending

5  University of Phoenix, and graduated in 2015 with a Bachelor of Science degree in Environmental

6  Science. Plaintiff attended classes online. Plaintiff relied on Defendants' advertisements making

7  the Corporate Relationships Representations, touting relationships and job or career opportunities

8  with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially

9  encountered Defendants' advertisements in approximately 2012, in television ads and on

10  Facebook. The Corporate Relationships Representations were reiterated by a University of

11  Phoenix recruiter and counselor. Based on confirmation by the University of Phoenix

12  representatives of the Corporate Relationships Representations, Plaintiff chose to enroll at

13  University of Phoenix. Plaintiff continued to encounter the Corporate Relationships

14  Representations while a student at University of Phoenix. Plaintiff also relied on these

15  Representations in choosing to remain a student at University of Phoenix. Plaintiff sought and did

16  not find employment with any of the companies that Defendants purported to have relationships

17  providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff

18  would not have enrolled in University of Phoenix if Plaintiff had known that the advertisements

19  touting relationships with and job or career opportunities specifically for University of Phoenix

20  graduates at certain companies were false and misleading. Plaintiff did not discover, and did not

21  know of facts that would have caused a reasonable person to suspect, that Plaintiff had suffered

22  harm that was caused by Defendants' wrongful conduct until within the applicable limitations

23  period.

24      **50.**      Plaintiff Raquel Mendoza was at all relevant times a resident of Dinuba, California.

25  Plaintiff enrolled in University of Phoenix in 2015, paid tuition and associated costs of attending

26  University of Phoenix, and graduated in 2020 with a Bachelor of Science degree in Business.

27  Plaintiff attended classes online. Plaintiff relied on Defendants' advertisements making the

28

COMPLAINT FOR DAMAGES

Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially encountered Defendants' advertisements in approximately 2014, in television ads and on the University of Phoenix website. The Corporate Relationships Representations were reiterated by a University of Phoenix enrollment advisor and student advisor. Based on confirmation by the University of Phoenix representatives of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to encounter the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these Representations in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the advertisements touting relationships with and job or career opportunities specifically for University of Phoenix graduates at certain companies were false and misleading. Plaintiff did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Plaintiff had suffered harm that was caused by Defendants' wrongful conduct until within the applicable limitations period.

51.     Plaintiff Marjorie Moss was at all relevant times a resident of La Palma, California. Plaintiff enrolled in University of Phoenix in 2014, paid tuition and associated costs of attending University of Phoenix, and graduated in 2019 with a Bachelor of Science degree in Criminal Justice Administration. Plaintiff attended classes at the Rancho Cucamonga Campus in California. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially encountered Defendants' advertisements in approximately 2013, in University of Phoenix website. The Corporate Relationships Representations were reiterated by a University of Phoenix counselor and enrollment advisor. Based on confirmation by the University of Phoenix representatives of the

38

Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to encounter the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these Representations in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the advertisements touting relationships with and job or career opportunities specifically for University of Phoenix graduates at certain companies were false and misleading. Plaintiff did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Plaintiff had suffered harm that was caused by Defendants' wrongful conduct until within the applicable limitations period.

52. Plaintiff Lisa Ramirez was at all relevant times a resident of Murrieta, California. Plaintiff enrolled in University of Phoenix in 2014, paid tuition and associated costs of attending University of Phoenix, and graduated in 2017 with a Bachelor of Science degree in Human Services, and in 2020 with a Master of Science degree in Accounting. Plaintiff attended classes online in Murrieta, California. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially encountered Defendants' advertisements in approximately 2013, in television ads, radio ads, and on the Camp Pendleton Base. The Corporate Relationships Representations were reiterated by a University of Phoenix financial advisor and counselor. Based on confirmation by the University of Phoenix representatives of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to encounter the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these Representations in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff

COMPLAINT FOR DAMAGES

1    would not have enrolled in University of Phoenix if Plaintiff had known that the advertisements
2    touting relationships with and job or career opportunities specifically for University of Phoenix
3    graduates at certain companies were false and misleading. Plaintiff did not discover, and did not
4    know of facts that would have caused a reasonable person to suspect, that Plaintiff had suffered
5    harm that was caused by Defendants' wrongful conduct until within the applicable limitations
6    period.

7            **53.**    Plaintiff Kayla Rasmussen was at all relevant times a resident of Fairfield,
8    California. Plaintiff enrolled in University of Phoenix in 2014, paid tuition and associated costs of
9    attending University of Phoenix, and graduated in 2017 with a Bachelor of Science degree in
10   Health Administration. Plaintiff attended classes online. Plaintiff relied on Defendants'
11   advertisements making the Corporate Relationships Representations, touting relationships and job
12   or career opportunities with certain companies, when choosing to enroll in University of Phoenix.
13   Plaintiff initially encountered Defendants' advertisements in approximately 2014, in radio ads,
14   television ads, and on the University of Phoenix website. The Corporate Relationships
15   Representations were reiterated by a University of Phoenix recruiter and a senior enrollment
16   advisor. Based on confirmation by the University of Phoenix representatives of the Corporate
17   Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff
18   continued to encounter the Corporate Relationships Representations while a student at University
19   of Phoenix. Plaintiff also relied on these Representations in choosing to remain a student at
20   University of Phoenix. Plaintiff sought and did not find employment with any of the companies
21   that Defendants purported to have relationships providing job or career opportunities specifically
22   to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if
23   Plaintiff had known that the advertisements touting relationships with and job or career
24   opportunities specifically for University of Phoenix graduates at certain companies were false and
25   misleading. Plaintiff did not discover, and did not know of facts that would have caused a
26   reasonable person to suspect, that Plaintiff had suffered harm that was caused by Defendants'
27   wrongful conduct until within the applicable limitations period.

28

COMPLAINT FOR DAMAGES

54.     Plaintiff Kao Saelee was at all relevant times a resident of Sacramento, California. Plaintiff enrolled in University of Phoenix in 2014, paid tuition and associated costs of attending University of Phoenix, and graduated in 2016 with a Bachelor of Science degree in Information Technology. Plaintiff attended classes online. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially encountered Defendants' advertisements in approximately 2013, in television ads and flyers. The Corporate Relationships Representations were reiterated by a University of Phoenix enrollment advisor and admissions representative. Based on confirmation by the University of Phoenix representatives of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to encounter the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these Representations in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the advertisements touting relationships with and job or career opportunities specifically for University of Phoenix graduates at certain companies were false and misleading. Plaintiff did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Plaintiff had suffered harm that was caused by Defendants' wrongful conduct until within the applicable limitations period.

55.     Plaintiff Benito Serrano was at all relevant times a resident of Menifee, California. Plaintiff enrolled in University of Phoenix in 2014, paid tuition and associated costs of attending University of Phoenix, and graduated in 2017 with a Bachelor of Science degree in Business. Plaintiff attended classes at the Murrieta, San Bernardino and Ontario, California Campuses. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies,

COMPLAINT FOR DAMAGES

when choosing to enroll in University of Phoenix. Plaintiff initially encountered Defendants' advertisements in approximately 2014, in television ads, brochures, and on the University of Phoenix website. The Corporate Relationships Representations were reiterated by a University of Phoenix recruiter and a counselor. Based on confirmation by the University of Phoenix representatives of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to encounter the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these Representations in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the advertisements touting relationships with and job or career opportunities specifically for University of Phoenix graduates at certain companies were false and misleading. Plaintiff did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Plaintiff had suffered harm that was caused by Defendants' wrongful conduct until within the applicable limitations period.

**56.**     Plaintiff Sandra Sifontes was at all relevant times a resident of Long Beach, California. Plaintiff enrolled in University of Phoenix in 2015, paid tuition and associated costs of attending University of Phoenix, and graduated in 2019 with a Bachelor of Science degree in Business. Plaintiff attended classes at classes online. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially encountered Defendants' advertisements in approximately 2014, on television ads, and radio ads. The Corporate Relationships Representations were reiterated by a University of Phoenix recruiter and a counselor. Based on confirmation by the University of Phoenix representatives of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to encounter the Corporate Relationships Representations while a student at

COMPLAINT FOR DAMAGES

University of Phoenix. Plaintiff also relied on these Representations in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the advertisements touting relationships with and job or career opportunities specifically for University of Phoenix graduates at certain companies were false and misleading. Plaintiff did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Plaintiff had suffered harm that was caused by Defendants' wrongful conduct until within the applicable limitations period.

57.     Plaintiff Miesha D. Tobin was at all relevant times a resident of Hemet, California. Plaintiff enrolled in University of Phoenix in 2012, paid tuition and associated costs of attending University of Phoenix, and graduated in 2014 with an Associate of Arts degree. Plaintiff attended classes online. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially encountered Defendants' advertisements in approximately 2012, in television ads and on the University of Phoenix website. The Corporate Relationships Representations were reiterated by a University of Phoenix enrollment advisor. Based on confirmation by the University of Phoenix representative of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to encounter the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these Representations in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the advertisements touting relationships with and job or career opportunities specifically for University of Phoenix graduates at certain companies were false and misleading. Plaintiff did not discover, and did not know of facts that would have caused a

1  reasonable person to suspect, that Plaintiff had suffered harm that was caused by Defendants'
2  wrongful conduct until within the applicable limitations period.

3      **58.**    Plaintiff Tierra Tubbs was at all relevant times a resident of Canyon Country,
4  California. Plaintiff enrolled in University of Phoenix in 2013, paid tuition and associated costs of
5  attending University of Phoenix, and graduated in 2015 with a Bachelor of Science degree in
6  Health Administration. Plaintiff attended classes at The Woodland Hills Learning Center, Harbor
7  Gateway Campus, and online. Plaintiff relied on Defendants' advertisements making the Corporate
8  Relationships Representations, touting relationships and job or career opportunities with certain
9  companies, when choosing to enroll in University of Phoenix. Plaintiff initially encountered
10  Defendants' advertisements in approximately 2013, in television commercials, on the University
11  of Phoenix website, in radio ads, YouTube videos, and brochures. The Corporate Relationships
12  Representations were reiterated by a University of Phoenix recruiter. Based on confirmation by
13  the University of Phoenix representative of the Corporate Relationships Representations, Plaintiff
14  chose to enroll at University of Phoenix. Plaintiff continued to encounter the Corporate
15  Relationships Representations while a student at University of Phoenix. Plaintiff also relied on
16  these Representations in choosing to remain a student at University of Phoenix. Plaintiff sought
17  and did not find employment with any of the companies that Defendants purported to have
18  relationships providing job or career opportunities specifically to University of Phoenix graduates.
19  Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the
20  advertisements touting relationships with and job or career opportunities specifically for
21  University of Phoenix graduates at certain companies were false and misleading. Plaintiff did not
22  discover, and did not know of facts that would have caused a reasonable person to suspect, that
23  Plaintiff had suffered harm that was caused by Defendants' wrongful conduct until within the
24  applicable limitations period.

25      **59.**    Plaintiff Shamica Whittaker was at all relevant times a resident of Sacramento,
26  California. Plaintiff enrolled in University of Phoenix in 2016, paid tuition and associated costs
27  of attending University of Phoenix, and graduated in 2020 with a Bachelor of Science degree in

28

COMPLAINT FOR DAMAGES

Psychology. Plaintiff attended classes online in Sacramento, California. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially encountered Defendants' advertisements in approximately 2015, in television ads, Facebook, and The University of Phoenix website, and radio ads. The Corporate Relationships Representations were reiterated by a University of Phoenix recruiter, and admissions representative, financial advisor. Based on confirmation by the University of Phoenix representative of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to encounter the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these Representations in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the advertisements touting relationships with and job or career opportunities specifically for University of Phoenix graduates at certain companies were false and misleading. Plaintiff did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Plaintiff had suffered harm that was caused by Defendants' wrongful conduct until within the applicable limitations period.

## **DEFENDANTS**

**60.**     The University of Phoenix, Inc. is an Arizona corporation, with its principal place of business at 4025 S. Riverpoint Parkway, Phoenix AZ, 85040. University of Phoenix transacts or has transacted business in this district and throughout the United States. At all times material to this Complaint, acting alone or in concert with others, University of Phoenix has advertised, marketed, distributed, or sold educational products and services to consumers throughout the United States, California, and in this district. Defendant University of Phoenix may be served with

process through its registered agent Corporation Service Company D/B/A CSC Lawyers Incorporating Service Company, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833.

61.    Apollo Education Group, Inc., formerly known as Apollo Group, Inc., transacts or has transacted business in this district and throughout the United States. Apollo Education Group parent company of The University of Phoenix, Inc. At all times material to this Complaint, with respect to the acts and practices of The University of Phoenix, Inc. that are described below, Apollo Education Group, Inc. dominated or controlled those acts or practices, knew of or approved those acts and practices, or benefited from those acts and practices. Defendant Apollo Education Group, may be served with process through its registered agent Corporation Service Company D/B/A CSC Lawyers Incorporating Service Company, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833.

62.    DOES 1 through 10 are sued under fictitious names, which Plaintiffs will amend upon identification and knowledge of their true names. Along with Defendants The University of Phoenix, Inc. and Apollo Education Group, Inc., each DOE Defendant is a proximate cause of Plaintiffs' harm.

## Overview of Defendants' Business and Advertising

63.    Apollo Education Group, Inc. operated University of Phoenix, a private, for-profit post-secondary educational institution, with approximately 55 campuses throughout the United States. Though University of Phoenix offers both in-person and online classes, most University of Phoenix students attend class exclusively online. University of Phoenix offers certificate courses and associates, bachelors, masters, and doctoral degree programs.

64.    At all relevant times Apollo Education Group, Inc. was the parent company of University of Phoenix, and controlled, dominated, or directed the acts and practices of University of Phoenix, and benefitted from University of Phoenix's decisions and profitability. In fact, Apollo Education Group, Inc. derived between 78-91% of its annual net revenue from University of Phoenix from 2012 through 2021. University of Phoenix's founder, John Sperling, was the Apollo Education Group, Inc. Board Chairman through 2012, and his son, Peter Sperling took over as the

Apollo Education Group, Inc. Board Chairman in 2012. University of Phoenix presented various advertising campaigns at issue to the Apollo Education Group, Inc. Board for its review and endorsement, and Apollo Education Group, Inc. ultimately gave "total support" to University of Phoenix for such advertising campaigns, including the *Let's Get to Work* campaign described herein.

65. University of Phoenix has charged consumers tuition ranging from about $7,400 to $19,400 per year, depending on the program.

66. Since 2012, University of Phoenix**'s** net revenue has exceeded $13.5 billion. Apollo Education Group, Inc., during the same time, derived between 78% to 91% of its annual net revenue from University of Phoenix.

67. Apollo Education Group, Inc. and University of Phoenix have relied heavily on advertising to attract students to University of Phoenix, including specific advertisements targeting military and Hispanic consumers. Apollo Educations Group, Inc. and University of Phoenix spent over $1.7 billion on advertising and marketing between fiscal years 2013 and 2015 alone.

68. Prior to 2012, Defendants' advertising campaigns for University of Phoenix primarily emphasized factors such as flexibility, convenience, online coursework, and accreditation. By early 2012, however, Defendants' market research indicated that this advertising no longer differentiated University of Phoenix from its competitors, which were touting similar benefits.

69. Additionally, according to SEC filings and internal documents, University of Phoenix's enrollment numbers were declining due to increased competition for students. The average enrollment in degree programs at University of Phoenix between 2010 and 2012 dropped from approximately 460,900 to 356,900 students.

**Defendants' "Let's Get To Work" Advertising Campaign**

70. In 2012, based on market research, Defendants adopted an advertising strategy focused on claims connecting a University of Phoenix education with successful career or employment outcomes. Defendants' research showed that many students decided to enroll in post-

COMPLAINT FOR DAMAGES

1   secondary programs because of the potential for career success, including the belief that an

2   education will get them a job or a better salary. But Defendants' research also showed that

3   "consumers currently do not consider University of Phoenix to be their top choice... because they

4   do not believe University of Phoenix education will provide them the career outcome

5   advancements they desire."

6       **71.**    Defendants released a new advertising campaign in the summer of 2012 to change

7   this perception. Titled "Let's Get to Work," the campaign featured numerous high-profile

8   corporate employers, such as Microsoft, Twitter, Adobe, and Yahoo!. The overarching goal of the

9   campaign was to convince consumers that University of Phoenix students experience career

10   success because of University of Phoenix. Specifically, Defendants represented that University of

11   Phoenix worked with companies to create career or employment opportunities for University of

12   Phoenix students, and that University of Phoenix worked with the companies to develop

13   curriculum oriented to the companies' needs.

14       **72.**    Defendants selected companies to feature in their advertisements based on desired

15   brand association. The strategy was to focus on "large, stable, technology-based, forward-focused

16   companies with great reputations" because these companies drove the highest level of prospective

17   student interest.



COMPLAINT FOR DAMAGES

**73.**     In reality, these companies were not working with University of Phoenix or Apollo Education Group, Inc. to create job opportunities for University of Phoenix students or to develop curriculum.

### "Parking Lot" Television Ad

**74.**     Defendants have widely disseminated or caused to be disseminated, an advertisement, known as "Parking Lot," on numerous television stations, commencing around October 15, 2012.

**75.**     Narrated by Phylicia Rashad, known for her television role as Clair Huxtable, a successful attorney who balances work with family on *The Cosby Show*, Ms. Rashad's voice can be heard saying as the ad begins: "Like a lot of things, trying to find a better job can be frustrating, so at University of Phoenix we're working with a growing list of almost 2,000 corporate partners, companies like Microsoft, American Red Cross, and Adobe, to create options for you."

**76.**     Ms. Rashad concludes the commercial by stating: "Not only that, we're using what we learn from these partners to shape our curriculum so that when you find a job you want, you'll be a perfect fit. Let's Get to Work."



**77.**     In reality, the companies referenced in the "Parking Lot" advertisement did not have relationships with University of Phoenix or Apollo Education Group, Inc., and were not

working with Defendants to create job options for University of Phoenix students or to develop curriculum. Many of the "2,000 corporate partners," including the specific companies referenced in the "Parking Lot" advertisement, were what Defendants referred to as "Workforce Solutions" (WFS) partners - companies whose own employees received a tuition reduction benefit from University of Phoenix in exchange for the companies promoting Defendants' academic programs.

78.     Notwithstanding the misleading, deceptive, and false nature of the ads, University of Phoenix's Chief Business Operating Officer reported to the marketing team that he had presented the ad campaign to the Apollo Education Group, Inc. Board for its review and that the Board was "completely supportive of our strategies to differentiate UOPX." He further "assure[d]" the team that the "Let's Get to Work" campaign had the "total support" of Defendants' founder, who also was the Apollo Education Group, Inc. Board Chairman at the time, as well as his son, who subsequently took over as Chairman in December 2012.

### "Train Stops" Television Ad

79.     Another example of an advertisement disseminated on numerous television station as part of Defendants' "Let's Get to Work" campaign's is titled "Train Stops." The purpose of the "Train Stops" advertisement was to highlight that University of Phoenix's corporate partners connect University of Phoenix students with meaningful employment opportunities.

80.     As the scene open inside a subway train, Ms. Rashad states: "At University of Phoenix, we know the value of your education is where it can take you." The camera focuses on a female passenger looking up at a station map depicting logos of top companies, including Waste Management, the American Red Cross, Methodist Hospital System, and Adobe.

81.     A blue billboard in the right corner states, "Get your foot in a few thousand doors."

82.     The advertisement next shows additional company logos, including AT&T, and turns to show the female passenger disembarking at her destination. As she does so, the voiceover concludes: "which is why we are proud to help connect our students with leading employers across the nation. Let's get to work."

83.     A University of Phoenix survey designed to gauge how well the ads delivered the intended message validated that the advertisement "conveys a compelling message that suggests that an education with UOPX opens doors and that UOPX can help them find jobs with specific corporate partners."

84.     In reality, Apollo Education Group, Inc. and University of Phoenix's relationships with "leading" employers or companies, including the corporate partners referenced in the "Train Stops" ad, did not create job opportunities for University of Phoenix students. University of Phoenix merely engaged a third-party provider to host an online portal that included job listings from some of these companies. Most, if not all, of the job listings were in fact widely available to non- University of Phoenix students.

### *"Hall of Success"* Television Ad

85.     Defendants also widely disseminated, or caused to be disseminated, on numerous television stations an advertisement known as "Hall of Success."

86.     In the opening scene of this advertisement, the camera zooms in on two heavy oak doors that open to reveal a wall covered in gilded frames. Ms. Rashad states: "The Hall of Success. Here we honor the proud accomplishments of our students and alums." In each frame is a person and a company logo, representing University of Phoenix alumni at various top employers such as the American Red Cross, CBS Radio, Microsoft, and Yahoo!.

87.     After identifying "Maria Salazar" at the American Red Cross and "Garlin Smith" at Yahoo!, Ms. Rashad states: "And for every Garlin, thousands more are hired by hundreds of top companies." As she makes this statement, the camera pans to show a vast hall with hundreds of additional gilded portraits.

88.     Ms. Rashad concludes: "That's right. University of Phoenix. Enroll now. We have a frame waiting for you."

89.     University of Phoenix's Chief Marketing Officer described the "Hall of Success" ad as a natural follow up to "Parking Lot" and "Train Stops" and their corporate partner messaging by associating names and faces with these well-known companies.

90.     In reality, hundreds of top companies did not regularly hire thousands of University of Phoenix students because of University of Phoenix's relationships. In fact, many University of Phoenix students were employed by those companies *prior to or at the time* they attended University of Phoenix, or were hired regardless of their graduation from University of Phoenix.

91.     For example, an alumnus depicted in the ad as employed at the American Red Cross joined the organization in 1997 and obtained a Master's degree from University of Phoenix in 2005 while already working at the American Red Cross for nearly eight years.

92.     Indeed, Defendants knew that many University of Phoenix students or graduates were already working at their respective companies before enrolling in University of Phoenix, and that University of Phoenix's relationship was not the reason for their employment at the company.

## Curriculum Radio Ad

93.     In a radio advertisement, Defendants touted University of Phoenix's relationships with particular companies, representing that these companies worked with University of Phoenix to design curriculum. The advertisement prominently claimed: If you want to know how to get hired, it pays to go right to the source. At University of Phoenix we're talking to companies like AT&T, Sodexo, and Adobe about what they're looking for in future employees. They're helping us shape our curriculum to make sure today's classes help prepare you to pursue tomorrow's jobs.

94.     In reality, AT&T, Sodexo, and Adobe did not work with University of Phoenix to develop curriculum that would prepare students for jobs at those companies.

## Internet Ads & Claims

95.     Defendants also have made the deceptive claims about employment opportunities and curriculum via digital ads, social media posts, and representations on their websites. Defendants disseminated and advertised the "Let's Get to Work" campaign, including the advertisement described above, on internet sites such as Facebook, Twitter, and YouTube. As a result of these efforts, the advertisements have garnered more than a billion impressions on social media channels such as Facebook, Twitter, and YouTube.

COMPLAINT FOR DAMAGES

96.   For example, on or around October 16, 2012, University of Phoenix claimed in a Facebook post that University of Phoenix is working with almost 2,000 corporate partners to provide job opportunities to University of Phoenix students and touted "Corporate Partnerships Shaping Curriculum."

97.   Similarly, Defendants have featured digital ads and banners on the internet representing that their relationships with companies provided students with job opportunities, using the hook: "Get your foot in a few thousand doors."

98.   Calling certain companies "Employer Partners," University of Phoenix's website has represented that University of Phoenix's relationships with these companies create employment opportunities for students. Defendants also have represented on their website that University of Phoenix's curricula was "developed in collaboration with industry leaders to help cultivate skills valued by employers." These claims have been made in proximity to logos of recognizable companies, including Fortune 500 companies. The imagery of the Fortune 500 Companies names combined with the voice-over representations together makes the advertisements misleading and deceptive.

**Ads Targeting Current and Former Military Members**

99.   Defendants also have made deceptive claims about employment opportunities in ads to current and former military members. University of Phoenix has been the largest recipient of Post-9/11 GI bill benefits since the program's inception. For example, University of Phoenix received over $271 million in 2012-2013 alone.

100.   University of Phoenix created and disseminated an advertisement that claimed University of Phoenix's corporate partnerships with companies like AT&T and Allied Barton offered hiring programs from University of Phoenix students who were veterans.

101.   In reality, Defendants' relationships with these companies did not create employment opportunities for University of Phoenix students who were current or former military members. The companies' hiring programs were open to all veterans and were not a result of their status as University of Phoenix "Corporate Partners."

**Enrollment Representative Claims**

**102.**     Beginning in or around September 2012, in conjunction with its "Let's Get to Work" campaign, Defendants rolled out talking points and encouraged employees, including "enrollment advisors," to communicate these false or misleading messages to students and prospective students.

**103.**     Defendants routinely sent links to the advertisements along with a campaign overview to employees. A one-sheet summary of the campaign talking points for *Hall of Success* included the claims that "Corporate Partnerships" are "Providing job opportunities and helping shape our curriculum." Defendants also tasked employees, some dubbed "Phoenix Champions," with messaging the campaign and provided talking points to various University of Phoenix teams, including enrollment advisors, academic counselors, finance advisors, call center employees, and other student or prospective student facing employees. The talking points claimed that University of Phoenix's relationships with corporate partners, including many Fortune 500 companies, provided an "inside track" and a "competitive advantage to our students." As proof that these relationships were working, Defendants directed employees to claims that alumni were being hired by "hundreds of top companies like Microsoft, Yahoo!, American Red Cross and CBS," Additional talking points described the online jobs portal as providing "[a]ccess to unique job opportunities and connections exclusive to University of Phoenix Students." In fact, University of Phoenix portal listings were not unique or specifically for University of Phoenix students, but were widely available to non- University of Phoenix students.

**104.**     At Defendants' behest, University of Phoenix enrollment advisors began telling prospective students that companies, including Fortune 500 companies, hired University of Phoenix students because of the school's corporate partnerships. For example, enrollment advisors represented to callers inquiring about University of Phoenix that the school has "over 2,000 partners in the local area… they hire our students first and from there they go on," and that University of Phoenix has "over 2,000 corporate partners and national industry partners that are looking specifically at University of Phoenix students to hire instead of any other schools."

COMPLAINT FOR DAMAGES

105.    In reality, the companies were not specifically hiring University of Phoenix students over other candidates, and were not working with University of Phoenix to develop tailored curricula. The "partnerships" were primarily marketing relationships that did not create jobs or curricula for University of Phoenix students.

<u>**Claims Regarding Relationships with Corporate Partners**</u>

106.    The "Let's Get to Work" campaign prominently touted that University of Phoenix's relationships with companies, such as Adobe, the American Red Cross, Avis, AT&T, Hitachi, MGM, Microsoft, Newell Rubbermaid, Sodexo, Twitter, and Waste Management, create job opportunities specifically for University of Phoenix students.

107.    Defendants' relationships with these companies did not create or provide job opportunities for University of Phoenix students. Any benefits from the relationships applied to current employees of the companies who would be able to attend University of Phoenix at a reduced cost.

108.    Moreover, any job opportunities with these companies were not unique to University of Phoenix students, and in fact, were widely available on other websites or were simply copied by University of Phoenix employees into the University of Phoenix career portal.

109.    Defendants knew that representations about job or career opportunities were false or misleading because they conducted annual alumni surveys that asked about employment outcomes. The 2013 alumni survey showed that approximately 60% of University of Phoenix students stayed with their same employer after graduation. In fact, the survey found "a significant disparity" between alumni expectations for obtaining a new job and the reality of obtaining a new job *with any company* base on a University of Phoenix degree.

<u>**Claims Regarding Curriculum Development**</u>

110.    Defendants also have represented that University of Phoenix has worked with companies, such as Adobe, the American Red Cross, Avis, AT&T, MGM, Microsoft, Newell Rubbermaid, Sodexo, and Twitter, to develop curriculum.

111.    In reality, these companies did not work with Defendants to develop curriculum.

COMPLAINT FOR DAMAGES

**112.** In fact, Defendants were aware that the claim was baseless. In November 2012, a University of Phoenix a Senior Vice President alerted numerous employees, including University of Phoenix and Apollo Education Group, Inc. executives, that the "Let's Get to Work" campaign was creating "misconceptions," including that companies were working with University of Phoenix to develop its curriculum. The Senior VP explained that University of Phoenix is not "working directly with companies one at a time and/or creating custom curriculum based upon their needs."

**113.** Similarly, in an October 24, 2012 email chain, Apollo Education Group, Inc. and University of Phoenix employees discussed how Defendants "have not worked with Microsoft yet," even though Defendants already had begun broadcasting ads, including "Parking Lot," that claimed the company was working with University of Phoenix to develop curriculum.

**114.** Rather than working with the companies touted in its advertisements, Defendants have relied on a list of standard job competencies generated by a third-party human resources company. This third-party framework identifies general skills and traits (such as "leading and deciding," "adapting and coping," and "organizing and executing") associated with particular jobs and industries. Contrary to what Defendants promised, this third-party framework does not reflect input from companies, such as Adobe, Microsoft, or Twitter, about their specific needs.

**115.** Defendants' research showed that employment prospects associated with post-secondary education were an important factor for many consumers deciding whether to enroll at University of Phoenix.

**116.** While developing the "Let's Get to Work" campaign, University of Phoenix surveyed the influence of its advertisements on consumers. According to one survey, "[t]he key compelling aspect of th[e] ["Parking Lot"] spot was the communication of University of Phoenix's partnership with 1,200 large corporations. These partnerships serve to inspire consumers to consider University of Phoenix and also served to validate/legitimize University of Phoenix as a brand."

COMPLAINT FOR DAMAGES

117.    By January 22, 2013, as University of Phoenix continued to roll out its "Let's Get to Work" campaign, the University of Phoenix Senior Vice President for University Strategy reported to the President's Cabinet (a group of University of Phoenix executives advising University of Phoenix's President) that the "repositioning of UOPX as connecting education to careers (E2C) appears to be paying off. Early results indicate significantly improved conversion rates…"

118.    Another study conducted around May 24, 2013 reported that the "Let's Get to Work" advertising campaign, including claims about "[r]elationships with leading employers and a dynamic curriculum designed with their input," increased the percentage of consumers who would consider attending University of Phoenix from 12% to 29%.

119.    The Boards and executives of University of Phoenix and Apollo Education Group, Inc. continued tracking the campaign's effectiveness in increasing "consumer consideration" of University of Phoenix.

## FIRST CAUSE OF ACTION

### FRAUD BY MISREPRESENTATION

120.    Plaintiffs incorporate paragraphs 1 through 119 of this Complaint as though fully alleged herein.

121.    Defendants misrepresented the benefits of graduating from University of Phoenix. Defendants falsely and misleadingly advertised working with certain prominent companies to develop curriculum and relationships with such companies created career or employment opportunities specifically for University of Phoenix graduates, the Corporate Relationships Representations, to induce potential students to purchase educational products and services, and to remain students through graduation. These representations were false, misleading, and deceptive.

122.    Defendants made the Corporate Relationships Representations recklessly and without regard for the truth of said representations.

123.    Defendants intended that Plaintiffs rely on the Corporate Relationships Representations when Plaintiffs enrolled and continued their studies at University of Phoenix.

**124.** Plaintiffs reasonably relied on Defendants' Corporate Relationships Representations in making their decision to enroll and continue their studies at University of Phoenix.

**125.** As a result of reasonable reliance by each named Plaintiff, Plaintiffs enrolled at and continued their studies at University of Phoenix.

**126.** Plaintiffs sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates.

**127.** As a result of Defendants' conduct detailed herein, Plaintiffs have been injured in that they paid tuition, purchased books and supplies, incurred debt, and attended classes in reliance on Defendants' representations.

**128.** Plaintiffs' reliance on Defendants' representations was the substantial factor in causing Plaintiffs' harms.

<u>**SECOND CAUSE OF ACTION**</u>

**FRAUD BY CONCEALMENT**

**129.** Plaintiffs incorporate paragraphs 1 through 128 of this Complaint as though fully alleged herein.

**130.** Defendants made representations to Plaintiffs that University of Phoenix worked with certain companies to create career or employment opportunities for University of Phoenix students, and that University of Phoenix worked with these companies to develop curriculum oriented to the companies' job needs.

**131.** Defendants' representations about the relationships with certain companies, the Corporate Relationships Representations, were false, in that these companies were not working with University of Phoenix or Apollo Education Group, Inc. to create job opportunities for University of Phoenix students or to develop curriculum—a material fact which Defendants intentionally concealed and suppressed from Plaintiffs.

**132.** In reality, many companies were what Defendants referred to internally as "Workforce Solutions" (WFS) partners - companies whose own employees received a tuition

COMPLAINT FOR DAMAGES

reduction benefit from University of Phoenix in exchange for the companies promoting Defendants' academic programs. Defendants were under a duty to disclose to Plaintiffs the material facts concerning the Corporate Relationships Representations, as Plaintiffs purchased educational goods and services from Defendants in reliance on Defendants' representations.

133. Defendants intentionally concealed or suppressed the true nature of the corporate relationships, with the intent that Plaintiffs would rely on these representations in enrolling and/or continuing to attend University of Phoenix.

134. Plaintiffs did not know about the true nature of the corporate relationships; had Plaintiffs known the true nature of the corporate relationships, Plaintiffs would not have chosen to enroll at and/or continue to attend University of Phoenix.

135. Defendants had exclusive knowledge of the true nature of the corporate relationships and actively concealed the true nature of the corporate relationships from Plaintiffs and the general public.

136. As a result of Defendants' intentional concealment or suppression of the true nature of the corporate relationships, Plaintiffs enrolled at and/or continued to attend University of Phoenix.

137. Plaintiffs sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates.

138. As a result of Defendants' conduct detailed herein, Plaintiffs have been injured in that they paid tuition, purchased books and supplies, incurred debt, and attended classes in reliance on Defendants' representations, which they believed to be true and accurate given Defendants intentional concealment or suppression of material facts.

### THIRD CAUSE OF ACTION
### NEGLIGENT MISREPRESENTATION

139. Plaintiffs incorporate paragraphs 1 through 138 of this Complaint as though fully alleged herein.

**140.** In the course of their business, Defendants' supplied false information about the benefits of obtaining a degree from University of Phoenix in advertising, marketing, or other promotion of their educational products and services, the Corporate Relationships Representations. Defendants supplied false information about working with certain prominent companies to develop curriculum and that relationships with such companies created career or employment opportunities specifically for University of Phoenix graduates, representing to Plaintiffs that said facts were true.

**141.** Although Defendants may claim to have believed that the Corporate Relationships Representations were true, Defendants had no reasonable grounds for believing the Corporate Relationships Representations were true when these representations were made.

**142.** Defendants intended that Plaintiffs rely on the Corporate Relationships Representations in deciding to purchase educational products and services from University of Phoenix, and/or to continue their studies with University of Phoenix through graduation.

**143.** Plaintiffs justifiably relied on Defendants' Corporate Relationships Representations in deciding to purchase educational products and services from University of Phoenix, and/or to continue their studies with University of Phoenix through graduation.

**144.** Plaintiffs sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates.

**145.** Plaintiffs' reliance on Defendants' Corporate Relationships Representations in deciding to purchase educational products and services from University of Phoenix, and/or to continue their studies with University of Phoenix through graduation, was a substantial factor in causing Plaintiffs' harm, as Plaintiffs were induced to enroll at University of Phoenix and pay tuition and other associated costs of attending University of Phoenix.

COMPLAINT FOR DAMAGES

1

2

### FOURTH CAUSE OF ACTION

**VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT**

**(Cal. Civ. Code § 1750, *et seq.*)**

3

4

**146.**     Plaintiffs incorporate paragraphs 1 through 145 of this Complaint as though fully alleged herein.

5

6

**147.**     California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*, "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." CAL. CIV. CODE § 1760.

7

8

9

10

**148.**     Plaintiffs purchased educational goods and services from University of Phoenix, as defined in Cal. Civ. Code § 1761(a).

11

12

**149.**     Plaintiffs are "consumers" as that term is defined by the CLRA in Cal Civ. Code 1761(d), because they purchased educational goods and services from University of Phoenix for "personal, family or household purposes." CAL. CIV. CODE § 1761 (d).

13

14

15

**150.**     Defendants' actions, representations, and conduct violated the CLRA because they extend to transactions that intended to result, and which have resulted in, the sale of educational goods and services to consumers—Plaintiffs herein.

16

17

18

**151.**     Defendants misrepresented the benefits of obtaining a degree from University of Phoenix in advertising, marketing, or other promotion of educational products and services. Defendants' Corporate Relationships Representations were false, misleading, and deceptive.

19

20

21

**152.**     Plaintiffs reasonably relied on Defendants' representations in deciding to enroll in and to continue their studies at University of Phoenix through graduation.

22

23

**153.**     Plaintiffs sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates.

24

25

26

**154.**     California Civil Code §§1770(a)(5) prohibits "[r]epresenting that... services have characteristics... benefits... which they do not have...." Defendants have violated this provision by advertising working with certain prominent companies to develop curriculum and that

27

28

relationships with such companies created career or employment opportunities specifically for University of Phoenix graduates, which were false, not true, or inaccurate.

**155.**     The facts concealed, omitted and misrepresented by Defendants are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase the educational goods and services. Had Plaintiffs known the truth about Defendants' Corporate Relationships Representations, they would not have purchased educational goods and services from Defendants.

**156.**     Plaintiffs have suffered injury in fact and actual damages resulting from Defendants' material omissions and misrepresentations because they were induced to enroll at University of Phoenix and pay tuition and associated costs of attending University of Phoenix.

**157.**     Prior to the filing of this Complaint, a notice letter was served on Defendants for each Plaintiff in compliance with California Civil Code §1782(a).  Plaintiffs sent Defendants letters via certified mail, return receipt requested, advising Defendants that they are in violation of the CLRA and must correct, repair, replace or otherwise rectify the violations of §1770.  As of the date of this filing, Defendants failed to remedy these violations.

**158.**     Pursuant to Civil Code §1780(a), Plaintiffs seek and are entitled to actual damages, restitution of property, punitive damages, attorney's fees and costs.

### **FIFTH CAUSE OF ACTION**
### **VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW**
### **(Cal. Bus. & Prof. Code § 17200, *et seq.*)**

**159.**     Plaintiffs incorporate paragraphs 1 through 158 of this Complaint as though fully alleged herein.

**160.**     The California Unfair Competition Law ("UCL") provides in pertinent part that: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising…"

### *A. "Unlawful" Prong*

**161.**     Defendants' business practices, described herein violated the "unlawful" prong of

the UCL by violating the California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*; the California False Advertising Law, Cal Civ. Code §§ 17500, *et seq.*; the California Postsecondary Education Act of 2009, Cal. Education Code §§ 94700, *et seq.*; and other applicable laws, as described herein.

162. To continue receiving and maximizing the amount of Title IV federal funding it received, Defendants engaged in illegal, unfair and deceptive conduct in the form of its fraudulent marketing scheme, as set forth herein, to further their goal of enrolling as many students as possible in its programs, all in violation of the California Private Postsecondary Education Act of 2009, because Defendants made promises or guarantees that overstated the employment and/or income prospects of its graduates through its deceptive marketing practices. *See* Cal. Education Code §§ 94700, *et seq.*

### B. *"Unfair" Prong*

163. Defendants' business practices described herein violated the "unfair" prong of the UCL in that the conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits. Defendants' 90% Representation and Higher Earnings Representation are of no benefit to consumers.

### C. *"Fraudulent" Prong*

164. Defendants violated the "fraudulent" prong of the UCL by misrepresenting to Plaintiffs the benefits of obtaining a degree from University of Phoenix in advertising, marketing, or other promotion of educational products and services, where the Corporate Relationships Representations were false, misleading, and deceptive, as detailed herein.

165. Plaintiffs acted reasonably when they relied on Defendants' misrepresentations in purchasing the educational goods and services—reasonably believing Defendants' Corporate Relationships Representations were true and lawful.

166. Plaintiffs lost money or property as a result of Defendants' UCL violations because Plaintiffs would not have purchased the educational goods and services absent

Defendants' illegal conduct as set forth herein, or if the true facts were known concerning Defendants' representations, and sought but did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates.

167.    As a result of Defendants' conduct as set forth above, Plaintiffs are entitled to monetary relief.[3]

### SIXTH CAUSE OF ACTION

### VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW

### (Cal. Bus. & Prof. Code § 17500, *et seq.*)

168.    Plaintiffs incorporate paragraphs 1 through 167 of this Complaint as though fully alleged herein.

169.    Under the FAL, the State of California makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state .... in any *advertising* device … or in any other manner or means whatever, including over the Internet, any statement, concerning … personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." CAL. BUS. & PROF. CODE § 17500.

170.    Defendants engaged in a marketing scheme whereby they misrepresented the benefits of obtaining a degree from University of Phoenix in advertising, marketing, or other promotion of educational products and services. The advertising, marketing, or other promotion included the Corporate Relationships Representations, conveying the false or inaccurate message about working with certain prominent companies to develop curriculum and that relationships with

---

[3] Plaintiffs are not requesting injunctive relief, under the California Business and Professions Code, to restrain such future acts of unfair competition by Defendants, as Defendants have already been enjoined from engaging in the very same unfair competition practices complained of herein pursuant to the terms of a settlement agreement reached with the Federal Trade Commission. *See Federal Trade Commission v. The University of Phoenix, Inc. et al.,* Case No. CV-19-5772-PHX-ESW, Dist. Arizona, Doc. 15.

such companies created career or employment opportunities specifically for University of Phoenix graduates.

**171.**     These representations were made through various means such as television, internet webpages, YouTube, brochures, print advertisements, emails, radio ads and in person by Defendants' employees, agents, and/or representatives.

**172.**     Defendant's *advertisements* were made in California and within this federal district, and come within the definition of *advertising* as contained in Bus. & Prof Code §§ 17500, *et seq.* in that the Corporate Relationships Representations were intended to induce Plaintiffs to purchase educational goods and services. Defendants knew the conduct was unauthorized, inaccurate, and misleading.

**173.**     Defendants violated California law, as set forth herein, because the Corporate Relationships Representations advertised working with certain prominent companies to develop curriculum and that relationships with such companies created career or employment opportunities specifically for University of Phoenix graduates.

**174.**     Defendants knew or should have known, through the exercise of reasonable care that the Corporate Relationships Representations were untrue and misleading.

**175.**     Plaintiffs lost money or property as a result of Defendant's FAL violations because they would not have purchased educational goods and services from Defendants absent Defendants' illegal conduct as set forth herein, or if the true facts were known concerning Defendants' Corporate Relationships Representations, and Plaintiffs sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates.

**176.**     Plaintiffs are therefore entitled to monetary relief.[4]

---

[4] Plaintiffs in are not requesting injunctive relief under the California Business and Professions Code to restrain such future acts of unfair competition by Defendants as Defendants have already been enjoined from engaging in the very same unfair competition practices complained of herein, pursuant to the terms of a settlement agreement reached with the Federal Trade Commission. *See Federal Trade Commission v. The University of Phoenix, Inc. et al.,* Case No. CV-19-5772-PHX-ESW, Dist. Arizona, Doc. 15.

COMPLAINT FOR DAMAGES

## SEVENTH CAUSE OF ACTION
### CIVIL THEFT
### (Cal. Penal Code § 496)

**177.** Plaintiffs incorporate paragraphs 1 through 176 of this Complaint as though fully alleged herein.

**178.** Penal Code Section 496(a) states that "[e]very person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, shall be punished by imprisonment in a state prison, or in a county jail for not more than one year." CAL. PENAL CODE § 496(a).

**179.** Penal Code Section 496(c) states that "Any person who has been injured by a violation of subdivision (a) or (b) may bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees." CAL. PENAL CODE § 496(c).

**180.** Section 496(a) extends to property "that has been obtained in a manner constituting theft." CAL. PENAL CODE § 496(a).

**181.** Penal Code Section 484 describes acts constituting theft. The first sentence of Section 484(a) states in relevant part that "Every person . . . who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money . . . and thereby fraudulently gets or obtains possession of money . . . is guilty of theft." Cal. Penal Code § 484(a).

**182.** Section 484(a) thus defines theft to include theft by false pretenses. Penal Code Section 532 also defines criminal fraud in terms nearly identical to Section 484(a) and provides that these acts are punishable "in the same manner and to the same extent as larceny." CAL. PENAL CODE § 532.

**183.** As a result of the false and fraudulent representations by Defendants and their employees, agents and/or representatives as set out above, Defendants knowingly and designedly,

66

by false or fraudulent representations or pretenses, defrauded Plaintiffs of the money and funds paid in connection with their enrollment and attendance at University of Phoenix through graduation, and thereby fraudulently obtained possession of money from Plaintiffs.

**184.**    Further, Defendants have not only defrauded Plaintiffs of said property, but they have also knowingly withheld this property from Plaintiffs, with knowledge that the property was fraudulently obtained. Plaintiffs sent Defendants individual letters advising Defendants they have violated the CLRA and must correct, repair, replace or otherwise rectify the violations of §1770.  As of the date of this filing, Defendants failed to remedy these violations.

**185.**    Accordingly, Plaintiffs have been injured by a violation of Penal Code Section 496(a) and are therefore entitled pursuant to Penal Code Section 496(c) to three times the amount of actual damages, together with costs of suit and reasonable attorney's fees.

**EIGHT CAUSE OF ACTION**

**EXEMPLARY DAMAGES**

**(Cal. Penal Code § 496)**

**186.**    Plaintiffs incorporate paragraphs 1 through 185 of this Complaint as though fully alleged herein.

**187.**    Penal Code Section 496(a) states that  "[e]very person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, shall be punished by imprisonment in a state prison, or in a county jail for not more than one year." CAL. PENAL CODE § 496(a).

**188.**    Penal Code Section 496(c) states that "Any person who has been injured by a violation of subdivision (a) or (b) may bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees." CAL. PENAL CODE § 496(c).

**189.**    Section 496(a) extends to property "that has been obtained in a manner constituting theft." CAL. PENAL CODE § 496(a).

1    **190.**    Penal Code Section 484 describes acts constituting theft. The first sentence of

2    Section 484(a) states in relevant part that "Every person . . . who shall knowingly and designedly,

3    by any false or fraudulent representation or pretense, defraud any other person of money . . . and

4    thereby fraudulently gets or obtains possession of money . . . is guilty of theft." Cal. Penal Code §

5    484(a).

6    **191.**    Section 484(a) thus defines theft to include theft by false pretenses. Penal Code

7    Section 532 also defines criminal fraud in terms nearly identical to Section 484(a) and provides

8    that these acts are punishable "in the same manner and to the same extent as larceny." CAL. PENAL

9    CODE § 532.

10   **192.**    As a result of the false and fraudulent representations by Defendants and their

11   employees, agents and/or representatives as set out above, Defendants knowingly and designedly,

12   by false or fraudulent representations or pretenses, defrauded Plaintiffs of the money and funds

13   paid in connection with their enrollment and attendance at University of Phoenix through

14   graduation, and thereby fraudulently obtained possession of money from Plaintiffs.

15   **193.**    Further, Defendants have not only defrauded Plaintiffs of said property, but they

16   have also knowingly withheld this property from Plaintiffs, with knowledge that the property was

17   fraudulently obtained. Plaintiffs sent Defendants individual letters advising Defendants they have

18   violated the CLRA and must correct, repair, replace or otherwise rectify the violations of

19   §1770.  As of the date of this filing, Defendants failed to remedy these violations.

20   **194.**    Accordingly, Plaintiffs have been injured by a violation of Penal Code Section

21   496(a) and are therefore entitled pursuant to Penal Code Section 496(c) to three times the amount

22   of actual damages, together with costs of suit and reasonable attorney's fees.

23                           **<u>DEMAND FOR JURY TRIAL</u>**

24   **195.**    In accordance with Fed. R. Civ. P. 38 and Northern District of California Local

25   Rule 3-6(a), Plaintiffs demand a trial by jury on all issues.

26

27

28

COMPLAINT FOR DAMAGES

1

## **PRAYER FOR RELIEF**

2

Therefore, Plaintiffs respectfully request that Defendants be cited to appear and answer,

3

and that on final hearing, Plaintiffs have:

4
5
6
7

        a.  Restitution;
        b.  Economic damages, including lost opportunity costs;
        c.  Punitive damages;
        d.  Attorney's fees through entry of final judgment in this action;
        e.  Prejudgment and post-judgment interest;
        f.  Costs of this suit; and
        g.  Any other relief that the Court finds proper.

8

Dated: May 13, 2022

9
10

Respectfully submitted,

11
12

**THE CARLSON LAW FIRM, P.C.**
1500 ROSECRANS AVE., STE. 500
MANHATTAN BEACH, CA 90266
415-308-1915

13
14

By: /s/ Ruth Rizkalla
**RUTH RIZKALLA**
CBN 224973
RRizkalla@carlsonattorneys.com

15
16
17
18
19

**THE CARLSON LAW FIRM, P.C.**
1717 N. IH-35, STE. 305
ROUND ROCK, TX 78664
(512) 671-7277
**John R. Fabry**
JFabry@carlsonattorneys.com
**Emily Marlowe**
EMarlowe@carlsonattorneys.com
*\* Pro Hac Vice motions to be submitted.*

20
21
22
23
24
25
26
27
28

COMPLAINT FOR DAMAGES